FILED

2023 Feb-13  PM 01:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **PORTIA R. TONEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:21-cv-689-LCB** |
| | ) | |
| **ALABAMA A&M UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION & ORDER</u>

Portia Toney sues her former employer, Alabama A&M University, for disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Doc. 1 at 5–9). In short, Toney alleges that the University fired her "because it perceived her as being permanently impaired by or afflicted with COVID-19." (Doc. 32 at 21). The University now moves for summary judgment. (Doc. 26 at 1). As explained below, Toney does not have a triable claim against the University under the ADA or the Rehabilitation Act. The Court therefore grants the University's motion for summary judgment and dismisses Toney's claims with prejudice.

## I.   BACKGROUND

The facts of this case are straightforward. In January 2019, Alabama A&M University hired Portia Toney to serve as Secretary for the Office of Residential Life

and Housing. (Doc. 27-1 at 4). Her responsibilities included submitting requisitions, answering calls and emails, and supervising student workers. (Doc. 27-2 at 3). Toney reported directly to Karla Miller, Director of Residential Life and Housing. *Id.* Miller reported to Dr. Gary Crosby, Vice President of Student Affairs. *Id.*

Between January 2019 and May 2020, a respiratory virus known as COVID-19 emerged and spread to nearly every corner of the world. Alabama A&M was not spared. (Doc. 27-3 at 8–9). In an effort to slow the spread of the virus, the University closed its campuses, transferred its students to remote instruction, and permitted all nonessential employees to work remotely. (Doc. 27-1 at 4); (Doc. 27-4 at 3). The University later reopened its doors and adopted updated COVID-19 protocols in June 2020. (Doc. 27-1 at 107–08). The protocols required all faculty and staff members to immediately inform the University if they tested positive for COVID-19 or developed COVID-19 symptoms. *Id.* at 108. All employees without COVID-19 symptoms were ordered "to report to work as normal." *Id.*

The following month, Toney and two friends decided to take a "girls' trip." (Doc. 27-6 at 25). They hopped on a train bound for New Orleans from Birmingham on July 3 and spent a long weekend in The Big Easy before returning to Birmingham on July 6. *Id.* at 24–25. Somewhere along the way, Toney lost her sense of taste and

2

smell, and began experiencing headaches, chills, and fatigue—common symptoms of COVID-19. *Id.* at 18–19, 26; (Doc. 27-1 at 107).

On July 8, Toney visited her primary care physician, Dr. Michael Carter, and underwent a COVID-19 test. (Doc. 27-6 at 27); (Doc. 31-2 at 3); (Doc. 31-3 at 3). The test was positive. (Doc. 31-3 at 3). Without informing the University of her symptoms or diagnosis, Toney worked on campus from July 13 to July 16. (Doc. 27-2 at 7, 42); (Doc. 27-5 at 4–5); (Doc. 27-6 at 37–38). She returned to Dr. Carter and again tested positive for COVID-19 on July 21. (Doc. 31-3 at 3). On July 27, Dr. Carter provided Toney with a letter stating that she had twice tested positive for COVID-19, but that she was no longer symptomatic and should be allowed to return to work. *Id.* Toney emailed the letter to Human Resource officer Latonya Crutcher that same day. (Doc. 27-5 at 22). In her email, Toney asked whether she was cleared to return to work or whether she needed to remain in quarantine. *Id.*

The following day, July 28, Crutcher informed Toney that she could not return to work until she tested negative for COVID-19 and provided the University with a copy of her results. *Id.* at 6, 30. Crutcher also asked Toney when she last visited campus. *Id.* at 32. Toney replied that she had not been to campus since June 24 or June 25. *Id.* at 31. Immediately after her exchange with Toney, Crutcher called Dr. Jarrett Walton—Director for the Office of Human Resources—and informed

him that Toney had waited nearly three weeks to disclose that she had tested positive for COVID-19, in violation of University protocol. (Doc. 27-1 at 2, 7); (Doc. 27-5 at 6.

Later that day, Crutcher and Dr. Walton held a telephone conference with Toney to discuss her failure to immediately report her COVID-19 symptoms and diagnosis. (Doc. 27-1 at 7). During the call, Toney admitted that she worked on campus from July 13 to July 16 despite the fact that she had not disclosed her diagnosis to the University or received approval to return to campus. *Id.* at 132–34; (Doc. 27-6 at 37–38). Dr. Walton advised Toney that her actions were "of major concern and that additional follow up [might] occur." (Doc. 27-1 at 134).

On August 4, Toney tested negative for COVID-19 and provided the University with a copy of her results. (Doc. 27-5 at 6). The University received Toney's results and cleared her to return to work on August 7. (Doc. 27-1 at 9). Toney reported to campus as scheduled. (Doc. 27-6 at 40–41). At the end of the day, Toney received a letter informing her that the University was terminating her employment effective immediately. (Doc. 27-1 at 150). The letter itself did not provide any explanation for the decision. *Id.* This suit followed.

## II.    LEGAL STANDARD

The purpose of summary judgment is to identify and dispose of cases where the evidence is insufficient to merit holding a trial. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To survive summary judgment, a nonmovant must assert facts that make a sufficient showing on every essential element of his case on which he bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Factual allegations must cite to specific evidentiary materials in the record. FED. R. CIV. P. 56(c). Unsupported, speculative allegations do "not create a genuine issue of fact" and are not sufficient to withstand summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)). When ruling on a summary judgment motion, a court construes the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts about the facts in the nonmovant's favor. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).

## III.   DISCUSSION

Toney claims that the University unlawfully discriminated against her on the basis of disability (COVID-19) under Title I of the ADA and Section 504 of the Rehabilitation Act. (Doc. 1 at 5–9).[1] Title I of the ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). Similarly, Section 504 of the Rehabilitation Act "prohibits recipients of federal financial assistance from discriminating against individuals with disabilities." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007). The standard for determining liability is the same under both statutes, and cases involving the ADA are precedent for those involving the Rehabilitation Act and vice versa. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).[2] Accordingly, the Court considers Toney's discrimination claims together.

---

[1] The ADA is divided into four parts: Title I prohibits disability discrimination in employment, 42 U.S.C. § 12112(a); Title II prohibits disability discrimination in public services furnished by governmental entities, *id.* § 12132; Title III prohibits disability discrimination in public accommodations provided by private entities, *id.* § 12182(a); and Title IV prohibits retaliation and coercion against individuals who exercise their rights under the ADA, *id.* § 12203(a). Here, Toney states that her ADA claim arises under Title II, but alleges that the University discriminated against her in violation of § 12112 (Title I). (Doc. 1 at 5–6). The Court assumes Toney's ADA claim arises under Title I for purposes of this opinion. That said, the legal conclusions below would be the same if Toney's ADA claim arises under Title II.

[2] Cases involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, are also precedent for purposes of analyzing discrimination claims brought under the ADA and the Rehabilitation Act. *Rizo v. Ala. Dep't of Hum. Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (per curiam) ("This Court applies the law developed in Title VII, ADEA, and ADA cases interchangeably.").

A plaintiff may prove disability discrimination with direct or circumstantial evidence. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).[3] To establish discrimination through circumstantial evidence, a plaintiff must satisfy the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021). Here, Toney puts forth no direct evidence of discrimination. The Court thus analyzes her claims in accordance with the *McDonnell Douglas* framework.

Under that framework, a plaintiff bears the initial burden to establish a prima facie case of discrimination.[4] *Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017). If a plaintiff makes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory explanation for the adverse employment action. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc). If the defendant meets its burden, the plaintiff must ultimately prove by a preponderance of the evidence that the defendant's explanation is a pretext for

---

[3] Direct evidence is that which, "if believed, proves the existence of a fact without inference or presumption." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (quoting *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)). Under Eleventh Circuit precedent, "'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor' constitute direct evidence of discrimination." *Akouri v. St. of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (per curiam)).

[4] A prima facie case is a "legally required rebuttable presumption." *Prima Facie Case*, BLACK'S LAW DICTIONARY, at 1228 (8th ed. 2004).

unlawful discrimination. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *Ramirez v. Bausch & Lomb, Inc.*, 546 F. App'x 829, 832 (11th Cir. 2013) (per curiam).

### A.    Prima Facie Case

Toney fails to establish a prima facie case of discrimination. To make a prima facia case of disability discrimination, a plaintiff must show: (1) she had a disability; (2) she was otherwise qualified for the position; and (3) she was subjected to unlawful discrimination as a result of her disability. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). The term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(9)(B) (incorporating § 12102). Here, the University admits that Toney was qualified for her position. (Doc. 28 at 24). Toney concedes that she did not meet the first or second definition of disability. (Doc. 32 at 20). Thus, the issue is whether the University regarded Toney as having an impairment.

A plaintiff "meets the requirement of 'being regarded as having such an impairment'" if she establishes that "she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."

42 U.S.C. § 12102(1). The relevant inquiry is whether the employer perceived the plaintiff to have an impairment, not whether the plaintiff was actually impaired. *Forsyth v. Univ. of Ala., Bd. of Trs.*, 2021 WL 4075728, at *4 (11th Cir. Sept. 8, 2021) (per curiam).

There are two important caveats to the "regarded as" definition of disability. First, the definition applies only when an employer perceives an employee as having an existing impairment at the time of the adverse employment action. *EEOC v. STME, LLC*, 938 F.3d 1305, 1316 (11th Cir. 2019). Second, the definition does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). An impairment is transitory if it has "an actual or expected duration of 6 months or less." *Id.* Whether an impairment "is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f).

The University did not regard Toney as having an impairment. For starters, the University did not perceive Toney as having COVID-19 at the time of her termination. Toney tested negative for COVID-19 and provided the University with her test results on August 4, 2020. (Doc. 27-6 at 39); (Doc. 31-3 at 12). The University cleared Toney to return to work and allowed her on campus before firing her on August 7. (Doc. 27-6 at 39–41); (Doc. 31-1 at 40). Thus, the University did not perceive Toney as having COVID-19 at the time of her termination.

Furthermore, Toney's COVID-19 infection was a transitory and minor impairment. Courts routinely find that an impairment is transitory and minor when a doctor's note indicates that the impairment has a relatively quick recovery time. *E.g.*, *Richardson v. Koch Foods of Ala., LLC*, 2019 WL 1434662, at *7 (M.D. Ala. Mar. 29, 2019) (concluding that heart blockages constituted a transitory and minor impairment when a doctor's note opined that the plaintiff would be able to return to work within six weeks after diagnosis); *White v. Interstate Distrib. Co.*, 438 F. App'x 415, 420 (6th Cir. 2011) (holding that a fractured leg was a transitory and minor impairment when a doctor advised that the plaintiff's restrictions would last no more than two months). Courts also find that a COVID-19 infection—absent persistent, long-lasting symptoms—is a transitory and minor impairment. *Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1349 (M.D. Ga. 2021); *McCone v. Exela Techs., Inc.*, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022); *cf. Brown v. Roanoke Rehab. & Healthcare Ctr.*, 586 F. Supp. 3d 1171, 1179–80 (M.D. Ala. 2022) (finding that a plaintiff pleaded a facially plausible "regarded as" claim when she alleged that "she was discharged shortly after informing her employer that she was continuing to suffer from a severe, symptomatic case of COVID-19").

Toney developed COVID-19 symptoms on July 3, 2020, and first tested positive for the virus five days later. (Doc. 31-3 at 3). Her symptoms were not severe; they included headaches, chills, fever, and loss of taste and smell. (Doc. 27-6

at 18–19, 26). And they lasted no more than three weeks. (Doc. 27-3 at 13); (Doc. 27-6 at 27); (Doc. 31-3 at 10–12). Toney tested negative for the virus on August 4, 2020, and officially resumed work on August 7. (Doc. 27-6 at 40–41); (Doc. 31-3 at 3). Against this backdrop, Toney's bout of COVID-19 was—objectively—a transitory and minor impairment. Accordingly, the University did not regard Toney as having an impairment for purposes of the ADA or the Rehabilitation Act. Toney therefore fails to make a prima facie case of discrimination.

## B.    Legitimate Explanation & Pretext

Even assuming she makes a prima facie case, Toney fails to show pretext. Once a plaintiff makes a prima facie case of discrimination, the burden shifts to the defendant to articulate a specific, nondiscriminatory explanation for the adverse employment action. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998). This burden is exceedingly light; the defendant must simply proffer a nondiscriminatory reason, not prove the reason. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). Should the defendant meet its burden, the plaintiff must ultimately prove that the defendant's reason is a pretext for unlawful discrimination. *Denney*, 247 F.3d at 1183.

The University articulates a legitimate, nondiscriminatory reason for Toney's termination. An employee's failure to abide by internal organizational policy is a legitimate, nondiscriminatory reason for discharging the employee. *Kragor v.*

*Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1309 (11th Cir. 2012); *see also Turner v. Wal-Mart Assocs., Inc.*, 2022 WL 18495863, at *27 (D.S.C. July 6, 2022) (finding that a plaintiff's failure to abide by the defendants' COVID-19 policy constituted a legitimate, nondiscriminatory reason for the plaintiff's termination). Here, the University explains that it fired Toney because she violated its COVID-19 protocol requiring all faculty and staff members to immediately inform the University if they tested positive for COVID-19 or experienced COVID-19 symptoms. (Doc. 27-2 at 9); (Doc. 28 at 35). The University thus articulates a legitimate, nondiscriminatory reason for Toney's termination.

Toney fails to prove that the University's explanation is a pretext for unlawful discrimination. To prove an explanation is pretextual, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason*" for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). The inquiry is whether there are "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation that "a reasonable factfinder could find [it] unworthy of credence." *Jackson v. St. of Ala. St. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

Nothing in the record indicates that the University's explanation is false. Toney developed COVID-19 symptoms on July 3, 2020, and tested positive for the virus on July 8. (Doc. 31-3 at 3). Toney did not immediately inform the University

of her symptoms or diagnosis. (Doc. 27-2 at 7); (Doc. 27-5 at 4–5); (Doc. 27-6 at 27). Instead, she worked on campus from July 13 to July 16 and again tested positive for the virus on July 21 before finally informing the University of her diagnosis on July 27. (Doc. 27-2 at 7, 42); (Doc. 27-5 at 4–5); (Doc. 27-6 at 37–38). There is no genuine dispute that Toney's actions violated University protocol requiring all faculty and staff members to immediately inform the University if they tested positive for COVID-19 or developed COVID-19 symptoms. (Doc. 27-1 at 108). Accordingly, Toney fails to carry her ultimate burden to prove pretext—even if she makes a prima facie case of discrimination.

## IV.   CONCLUSION

The federal judiciary is not in the business of examining whether employment decisions are fair, prudent, or wise. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022). The courts are concerned only with "whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). In this case, the University did not fire Toney out of discriminatory animus. The University fired Toney because she blatantly disregarded its COVID-19 protocols. (Doc. 27-2 at 8–9); (Doc. 27-7 at 18). Accordingly, Toney does not have a triable discrimination claim against the University under the ADA or the Rehabilitation Act.

\*     \*     \*

The Court therefore **GRANTS** the University's motion for summary judgment (Doc. 26), **DISMISSES** Toney's claims with prejudice, and **DIRECTS** the Clerk of Court to close this case. The Court will enter a final judgment separately.

**DONE** and **ORDERED** February 13, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

14